UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
JACK ARGILA, *et al.*,                                          :
                                                                :
                                    Plaintiffs,                 :
                                                                :
                  -against-                                     :        REPORT AND
                                                                :        RECOMMENDATION
MACH GROUP INC.,                                                :
                                                                :        22-CV-4374 (KAM)(MMH)
                                    Defendant.                  :
---------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Jack Argila ("Argila"), in his fiduciary capacity as a Trustee of the Pointers,

Cleaners & Caulkers Welfare, Pension and Annuity Funds, the Bricklayers Joint Apprentice

Training Fund, the Labor Management Fund, and the Promotion Fund, and as President of the

Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U. AFL-CIO ("Local 1"),

and the Trustees of the Bricklayers and Trowel Trades International Pension Fund and the

International Masonry Institute sued Defendant Mach Group Inc. ("Mach"), alleging violations

of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et*

*seq.* ("ERISA"), the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA")

and state and common law.  (*See generally* Compl., ECF No. 1.)[1]  Before the Court is

Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2)

and Local Civil Rule 55.2(b).  (*See generally* Mot., ECF Nos. 36–41.)[2]  The Honorable Kiyo

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] Plaintiffs submit a Notice of Motion (Mot., ECF No. 36); a proposed default judgment order (Proposed Default Judgmt., ECF No. 36-1); a statement of damages (Damages Stmt., ECF No. 36-2); the affidavit of Plaintiff Jack Argila (Argila Aff., ECF No. 37) and its nine exhibits (Argila Aff. Exs. A–I, ECF Nos. 37-1 through 37-9); the affidavit of Plaintiffs' audit manager (Duravcevic Aff., ECF No. 38) and its nine exhibits (Duravcevic Aff. Exs. J–R, ECF Nos. 38-1 through 38-9);

A. Matsumoto referred the motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that: (1) the motion should be **granted** as to liability; (2) Plaintiffs should be awarded audit costs, attorneys' fees and costs, and post-judgment interest; (3) the motion should be **denied without prejudice** as to all other damages; and (4) Plaintiffs should be granted leave to supplement their briefing regarding damages.

I.    **BACKGROUND**

    A.    **Factual Allegations**

The Complaint alleges the following facts, which are assumed to be true for the purposes of this motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

        1.    **The Parties**

Argila serves as President of Local 1, a labor organization that represents employees within the meaning of ERISA and the LMRA. (Compl., ECF No. 1 ¶ 10.)  Local 1's membership includes the pointing, cleaning, and caulking trade and the bricklaying trade.  (*Id.*)

Argila is also a Trustee and Administrator of two jointly trusteed multiemployer employee benefit plans established pursuant to a collective bargaining agreement: (1) the Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds, and (2) the Bricklayers Joint Apprentice Training Funds (collectively, "the PCC Funds").  (*Id.* ¶¶ 4, 11).  The PCC Funds are employee benefit plans and multiemployer plans within the meaning of ERISA.  (*Id.* ¶ 4.)   The PCC Funds collect employee benefit contributions from employers who are

---

the declaration of Plaintiffs' counsel (Morgan Decl., ECF No. 39) and its eighteen exhibits (Morgan Decl. Exs. S–JJ, ECF Nos. 39-1 through 39-18); a memorandum of law (Pls. Mem., ECF No. 40); and a certificate of service for the default motion papers (ECF No. 41).

signatories to collective bargaining agreements with unions.  (*Id.*)  The PCC Funds also administer and collect contributions for two non-ERISA funds: (1) the Labor Management Relations Fund and (2) the Promotion Fund (collectively, the "non-ERISA Funds").  (*Id.* ¶ 6.) Finally, the PCC Funds collect dues and assessments from certain employees covered by collective bargaining agreements who authorize their employers to deduct union dues and assessments from their wages, including members of Local 1.  (*Id.* ¶ 5.)

The PCC Funds are authorized to collect contributions on behalf of the Bricklayers and Trowel Trades International Pension Fund ("IPF") and the International Masonry Institute ("IMI")  (collectively, the "International Funds").  (*Id.* ¶¶ 7–9, 11; Argila Aff., ECF No. 37 ¶ 2.) IPF and IMI are multiemployer, labor-management trust funds operating pursuant to various collective bargaining agreements within the meaning of the LMRA.  (*Id.* ¶¶ 7, 9.)  The PCC Funds and the International Funds (collectively with the non-ERISA Funds and the PCC Funds, "the "Funds") are also multiemployer plans and employee benefit plans within the meaning of ERISA.  (*Id.* ¶¶ 4, 7, 9.)

Mach is a domestic corporation engaged in the construction business. (*Id.* ¶¶ 12–13.) Mach is an employer within the meaning of ERISA and the LMRA.  (*Id.* ¶ 13.)

## 2.    The Relevant Agreements

At all relevant times, Mach was bound by several Project Labor Agreements ("PLAs") with regard to work performed on behalf of the New York City School Construction Authority ("SCA") and regarding the New York City Department of Parks & Recreation projects.  (*Id.* ¶¶ 29–30; Argila Aff. Exs. C & D, ECF Nos. 37-3 & 37-4.)  The PLAs incorporated collective bargaining agreements between Local 1 and the Building Restoration Contractors Association, Inc. for the periods July 1, 2015 through June 30, 2019, and July 1, 2019 through June 30,

2023 for pointing, cleaning, and caulking work (the "CBAs"). (Compl., ECF No. 1 ¶¶ 31–33; Argila Aff. Exs. A & B, ECF Nos. 37-1 & 37-2.)[3] Mach employed members of Local 1 to perform work that is covered under the PLAs and the CBAs. (Compl. ¶¶ 33, 52, 63, 74, 85, 96, 107, 118, 129.)

The CBAs require Mach to pay wage and wage supplements in the form of fringe benefit contributions to the Funds and to pay dues and assessments to Local 1. (*Id.* ¶¶ 35–36.) Mach was also obligated to submit all books and records requested by the Funds' auditors for a periodic review to ensure that all contributions to the CBA are paid in full, and to pay the costs of the audit if found delinquent. (*Id.* ¶ 40.)

### 3. The Audit Reports

Since approximately March 1, 2017, Mach has failed to pay fringe benefit contributions to the Funds and dues and assessments to Local 1 for employees performing work covered by the CBAs, and to submit to a full audit in connection with work performed under the PLAs. (*Id.* ¶ 44.) Between 2020 and 2022, the Funds attempted to collect the unpaid contributions, dues, and assessments from Mach.

The Funds retained the auditing company Kobgo Associates, Inc. ("Kobgo") to conduct an examination for the period of March 1, 2017 through August 31, 2020 (the "First Audit Period"). (*Id.* ¶ 133.) In an audit report dated November 11, 2020, Kobgo determined Mach's delinquency as an amount over $500,000, to which Mach objected. (*Id.* ¶¶ 133–34.) Subsequently, Kobgo issued a revised audit report dated February 16, 2021, reflecting a slightly decreased delinquency of over $460,000 for the First Audit Period. (*Id.* ¶ 135.) By

---

[3] Plaintiffs submitted unsigned copies of the CBAs.

4

letter dated March 26, 2021, the Funds' counsel provided Mach with a copy of the February 16, 2021 audit report and demanded that Mach either remit payment or propose a payment plan. (*Id.* ¶¶ 135–36.) Mach proposed a payment plan to resolve the delinquency but the Funds and Mach did not agree on settlement terms. (*Id.* ¶ 137.) Thereafter, the Funds learned about Mach's additional delinquency of approximately $116,000, which prompted a request for the audit period to be extended through June 30, 2021. (*Id.* ¶¶ 138.) In June and July 2021, the Funds' counsel notified the SCA, Mach, its general contractors, and its sureties that Mach had failed to pay contributions, dues, and assessments to the Funds. (*Id.* ¶¶ 139–41.) On July 12 and 14, 2021, Mach submitted partial payments to the Funds for specific SCA projects. (*Id.* ¶ 142.)

The cycle of audit reports, Mach's partial response, and revised audit reports continued at least twice. First, on September 9, 2021, Kobgo issued a revised audit report for the period March 1, 2017 through June 30, 2021 (the "Extended Audit Period"), showing a delinquency of over $600,000. (*Id.* ¶ 143.) Again, the Funds' counsel provided Mach with a copy of the September 9, 2021 audit report, demanded payment in full or written objections to the audit report, and notified third-parties (this time, subcontractors and sureties) of the delinquency. (*Id.* ¶¶ 144–145.) Between October and November 2021, Mach again submitted piecemeal objections to the September 9, 2021 audit report with supporting documents. (*Id.* ¶ 146.) Second, on December 15, 2021, Kobgo issued a revised audit report for the Extended Audit Period, this time showing a delinquency of over $480,000. (*Id.* ¶ 147.) By letter dated March 21, 2022, the Funds' counsel provided Mach with a copy of the December 15, 2021 audit report and again demanded full payment or substantiated written objections to the audit report. (*Id.*

¶ 148.)   On March 28, 2022, Mach submitted further audit objections and supporting documents.  (*Id.* ¶ 149.)

Kobgo issued a revised audit report on May 20, 2022, reflecting unpaid contributions, dues and assessments of over $450,000. (*Id.* ¶¶ 149–50.)  To date, Mach owes the Funds the unpaid contributions and owes Local 1 the unpaid dues and assessments. (*Id.* ¶ 151.)

### B.    Procedural History

Plaintiffs[4] initiated this action on July 25, 2022, against Mach and several other defendants, including Mach's subcontractors and sureties of the various construction projects.[5] (*See generally* Compl., ECF No. 1.)  Plaintiffs served Mach with the Summons and Complaint through New York's Secretary of State on August 22, 2022, and also personally served Defendant Mach on September 16, 2022.  (Affs. of Service, ECF Nos. 14, 27.)  After Mach failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default on December 14, 2022.  (Entry of Default, ECF No. 21.)  On August 21, 2023, Plaintiffs moved for default judgment against Mach, seeking findings on liability and damages.  (*See generally* Mot., ECF Nos. 36–41.)  On August 28, 2023, Plaintiffs served Mach by mail with the motion for default judgment at Mach's last known business address. (Cert. of Service, ECF No. 41.)

---

[4] Argila, Local 1, and the Funds are the Plaintiffs.

[5] Specifically, Mach's co-defendants were its President Aazad Parajuli, its subcontractors Civil Contracting Corp., Delric Construction Co., Inc., Pro-Metal Construction, Inc., and UTB-United Technology, Inc.; and sureties Endurance Assurance Corp., Endurance American Insurance Co., Liberty Mutual Insurance Company, QBE Insurance Corp., Guarantee Company of North America USA, and Seneca Insurance Company, Inc. (Compl., ECF No. 1 ¶¶ 16–28; Morgan Decl., ECF No. 39 ¶ 4.)  Plaintiffs voluntarily dismissed the action against the subcontractors and sureties after they submitted payments to the Funds.  (*See* ECF Nos. 12–13, 24, 32.) Plaintiffs also voluntarily dismissed the case against Parajuli, who filed for Chapter 7 bankruptcy. (*See* ECF No. 35.) Mach is the only remaining Defendant. (Pls. Mem., ECF No. 40 at 11.)

Judge Matsumoto referred the motion for report and recommendation.  (Oct. 5, 2023 Order Referring Mot.)

## II.    **STANDARD FOR DEFAULT JUDGMENT**

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)-(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up).

## III.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020).  Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful.  *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful.").  Because Mach was properly served, its failure to respond or otherwise appear in this action demonstrates willfulness.

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances."  *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021); *Finkel v. Gaffney-Kroese Elec. Supply Corp.*, No. 22-CV-1777 (DG)(TAM), 2023 WL 2579165, at *4 (E.D.N.Y. Feb. 22, 2023); *Gesualdi v. D. Gangi Contracting Corp.*,

No. 18-CV-3773 (FB)(SJB), 2019 WL 1130729, at *3 (E.D.N.Y. Feb. 11, 2019), *adopted by* 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019).  Accordingly, this factor weighs in favor of default judgment.

Third, Plaintiffs will be prejudiced if the motion for default judgment is denied because it has "no alternative legal redress."  *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017).  In other words, because Mach has failed to respond or otherwise appear in this action, without the entry of a default judgment, the Funds would be unable to recover the unpaid contributions and Local 1 would not receive unpaid dues and assessments. *Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprent., Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.,* No. 20-CV-6894 (LJL)(KHP), 2021 WL 2556130, at *2 (S.D.N.Y. May 13, 2021), *adopted sub nom. by Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2555840 (S.D.N.Y. June 22, 2021).

Based on the foregoing, entry of default judgment is permissible.

## IV.    LIABILITY

### A.    ERISA

Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; *Trs of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP), 2022 WL 17820119, at *3 (E.D.N.Y. Aug. 10, 2022).  To establish a violation of section 515, Plaintiffs must plausibly

allege that Mach is: (1) an employer; (2) bound by a CBA that required payment of contributions; and (3) failed to make those contributions. *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-CV-308 (RPK)(SJB), 2022 WL 18107257, at *5 (E.D.N.Y. Dec. 6, 2022).

The facts alleged in the Complaint establish Mach's liability. First, Plaintiffs allege that Mach is an employer engaged in the construction business, an industry affecting commerce; the Funds are multiemployer plans and employee benefit plans within the meaning of ERISA; and Local 1 is a labor organization within the meaning of ERISA. (Compl., ECF No. 1 ¶¶ 4, 7, 9–10, 13.)

Next, Plaintiffs allege Mach was bound by PLAs that required Mach to make fringe benefit contributions to the Funds for all employees. (*Id.* ¶¶ 29–32, 35–36.) Specifically, Mach executed Letters of Assent to the PLAs and performed work on projects covered by the PLAs, evidencing its intent to be bound by the PLAs. (Argila Aff. Exs. E–F, ECF Nos. 37-5 & 37-6.) The PLAs incorporated the CBAs. (Argila Aff. Exs. C & D, ECF Nos. 37-3 at 10–11 (SCA PLA art. 2 § 4) & 37-4 at 10–11 (NYC PLA (same).) Pursuant to the CBAs, Mach was required to pay contributions on behalf of its employees to each of the Funds, in amounts specified in the CBAs, from the first day of employment forward. (Argila Aff. Exs. A & B, ECF Nos. 37-1 at 17 (art. XV § 1) and 37-2 at 17 (same).)

Lastly, Plaintiffs allege that Mach failed to make those contributions pursuant to its obligations. (Compl., ECF No. 1 ¶¶ 44, 151.) "Audit reports may be relied on to prove defendant employers did not make required contributions to a fund if the audit report contains sufficient information to enable the Court to determine the amount of delinquent contributions." *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618

(ENV)(RER), 2020 WL 9814085, at *5 (E.D.N.Y. Feb. 25, 2020), *adopted by* Order Adopting R. & R., *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER), (E.D.N.Y. Mar. 21, 2020).  Plaintiff submits the affidavit of George Duravcevic, Kobgo's payroll audit manager, and copies of multiple audit reports reflecting Mach's unpaid contributions, dues, and assessments between 2020 and 2022.  (Duravcevic Aff. Exs. J–Q, ECF Nos. 38-1 to 38-8.)  To determine delinquencies, Kobgo reviewed Mach's books and records for specified periods and then compared them to the Funds' reports showing contributions, dues, and assessments remitted by the employer.  (Duravcevic Aff., ECF No. 38 ¶¶ 4–5.)

Based on the foregoing, the Court respectfully recommends entry of default judgment against Mach on the Fund's ERISA claim for unpaid contributions.

### B.    LMRA

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  "Under the LMRA, if an employer fails to make contributions to employee benefit plans as required by an agreement, [the employer] may be held liable."  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at *2 (E.D.N.Y. Oct. 10, 2023) (citation omitted).

Here, the facts alleged in the Complaint also establish Mach's liability under the LMRA.  First, Plaintiffs allege that Local 1 is a labor organization within the meaning of the LMRA representing employees in "the pointing, cleaning, and caulking trade and the

bricklaying trade." (Compl., ECF No. 1 ¶ 10.)  Second, Plaintiffs allege that Mach is "an employer engaged in an industry affecting commerce" within the meaning of the LMRA. (*Id.* ¶ 13.)  Next, Plaintiffs allege Mach was bound by PLAs, which incorporated CBAs that required Mach to deduct and remit dues and assessments to Local 1. (*Id.* ¶¶ 29–31, 36.) Finally, Plaintiffs allege that Mach failed to make those contributions to Local 1. (*Id.* ¶¶ 44, 151.)  "Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050 (KAM)(JRC), 2023 WL 5830338, at *4 (E.D.N.Y. July 31, 2023) *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023).

Based on the foregoing, the Court respectfully recommends entry of default judgment against Mach on Plaintiffs' LMRA claim for unpaid dues and assessments.

## V.  **DAMAGES**

As Mach's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).  Courts must determine damages "with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "To evaluate the proposed damages, the court 'may rely on detailed

affidavits or documentary evidence.'" *Focus Constr. Grp.*, 2023 WL 7687844, at *2 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"Where an employee benefit plan plaintiff has established liability under § 515 of ERISA, the court shall award the plan (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable attorney's fees and costs; (e) other relief the court deems appropriate." *Champion Elec.*, 2020 WL 9814085, at *4 (citing 29 U.S.C. § 1132(g)(2)).

Further, "although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *10 (E.D.N.Y. Sept. 5, 2019), *adopted sub nom. by Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019) (citation omitted).

Here, Plaintiffs seek unpaid ERISA contributions, interest and liquidated damages on the unpaid ERISA contributions, non-ERISA damages in the form of unpaid dues and assessments due to Local 1, interest on the non-ERISA damages, audit costs, and attorneys' fees and costs. (Pls.' Mem., ECF No. 40 at 12–20; Proposed Default Judgmt., ECF No. 36-1.) To support their requested damages, Plaintiffs rely heavily on the following documents: (1) a

revised audit report dated October 20, 2022 (the "Audit Report")[6] showing unpaid contributions, dues, and assessments (Duravcevic Aff. Ex. Q, ECF No. 38-8); (2) a spreadsheet accompanying the Audit Report (the "Audit Delinquency Spreadsheet") (Morgan Decl. Ex. FF, ECF No. 39-14); (3) a delinquency and omissions schedule dated January 6, 2023 ("D&O Schedule")[7] (Duravcevic Aff. Ex. R, ECF No. 38-9); and (4) a spreadsheet accompanying the D&O Schedule (the "D&O Schedule Delinquency Spreadsheet") (Morgan Decl. Ex. GG, ECF No. 39-15).    The Audit Report and the Audit Delinquency Spreadsheet support Plaintiffs' requested unpaid contributions, dues and assessments, interest, and liquidated damages for the Extended Audit Period—that is, from March 1, 2017 through June 30, 2021.    Similarly, the D&O Schedule and the D&O Schedule Delinquency Spreadsheet support their request for the same damages during the period from July 1, 2021 through October 27, 2022.

As discussed in detail below, "the Court has identified a number of significant errors [in the record] that prevent the Court from accurately recalculating and recommending an award of damages to plaintiffs at this time, except for audit costs, [attorneys' fees,]" and costs. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 21-CV-02518 (CBA)(JRC), 2022 WL 4642735, at *5 (E.D.N.Y. Sept. 15, 2022), *adopted by* No. 21-CV-2518 (CBA)(JRC), 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), *supplemented by* No. 21-CV-2518 (CBA)(JRC), 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022).

---

[6] Kobgo prepared the Audit Report in response to objections from Civil Contracting Corp., one of Mach's subcontractors.  (Duravcevic Aff., ECF No. 38 ¶¶ 17–18.)

[7] Kobgo issued the D&O Schedule after reviewing hourly tracking reports prepared by the SCA. (Duravcevic Aff., ECF No. 38 ¶ 21.)

### A.    Unpaid ERISA Contributions

Plaintiffs seek $107,163.36 in unpaid ERISA contributions, including (1) $28,168.51 in unpaid contributions for the period between March 1, 2017 through June 30, 2021 (the Extended Audit Period) and (2) $78,994.85 in unpaid contributions for the period between July 1, 2021 through October 27, 2022. (Proposed Default Judgmt., ECF No. 36-1; Morgan Decl., ECF No. 39 ¶¶ 51–52, 61–62.)

For the period from March 1, 2017 through June 30, 2021 (the Extended Audit Period), the Audit Report reflects a total delinquency of unpaid contributions, dues, and assessments of $420,802.75.   (Duravcevic Aff., ECF No. 38 ¶ 19; Duravcevic Aff. Ex. Q, ECF No. 38-8.) After the commencement of this lawsuit in 2023, Mach's general contractors and their sureties settled the delinquencies described in the Audit Report. (Morgan Decl., ECF No. 39 ¶ 50.) Thus, to determine the unpaid ERISA contributions for the period from March 1, 2017 through June 30, 2021, Plaintiffs subtracted the settlement payments from the total delinquency set forth in the Audit Report, and multiplied the result by 92%.  (*See* Morgan Decl., ECF No. 39 ¶ 51; Pls. Mem., ECF No. 40 at 18.)  According to Plaintiffs, the total delinquency for this time period (including unpaid ERISA contributions and unpaid LMRA dues and assessments) is $30,617.95, of which $28,168.51 in unpaid ERISA contributions only (*i.e.*, $30,617.95 x 92%). (Morgan Decl., ECF No. 39 ¶¶ 50–52.)

However, the Court has identified several errors and omissions that make it difficult to ensure the accuracy of the calculations.  *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone & Tile, Inc.*, No. 17-CV-3187 (NGG)(RER), 2022 WL 2063267, at *15 (E.D.N.Y. June 8, 2022). *First* and most significantly, to determine the delinquent contributions, Plaintiffs incorrectly subtract the settlement payments from the total delinquency set forth in the Audit

15

Report.  Because the amount of unpaid contributions governs the calculations for all subsequent calculations for dues and assessments, interest, and liquidated damages, these small errors are critical to the damages analysis.  For example, the Audit Delinquency Spreadsheet incorrectly lists subcontractor Civil Contracting Corp.'s settlement payment as $100,919.20 (Morgan Decl. Ex. FF, ECF Nos. 39-14 at 2.)  In fact, a copy of the actual check in the record reflects a slightly increased payment of $112,473.21. (Argila Aff. Ex. H, ECF No. 37-8 at 6.) *Second*, after incorrectly subtracting the settlement payments, Plaintiffs do not explain why 92% is the appropriate multiplier to determine the amount of unpaid contributions.  Counsel's declaration cites to the Audit Report and the Audit Delinquency Spreadsheet, but neither document explains the basis for the multiplier.  (*See* Morgan Decl., ECF No. 39 ¶ 51.)  *Third*, the Audit Delinquency Spreadsheet lists $214,926.75 as the total delinquent contributions as of January 6, 2023, but the Court's calculations of the balances due on the Audit Delinquency Spreadsheet yield a total of $210,549.16 ($192,819.04 for PCC Funds Contributions + $19,730.12 for International Contributions).  (Morgan Decl. Ex. FF, ECF No. 39-14.)  After a careful review of the settlement checks, the total remaining delinquency from March 1, 2017, to June 30, 2021, could be approximately $29,063.94,[8] of which $26,738.82 is unpaid contributions (*i.e.*, $29,063.94 x 92%, using Plaintiffs' unexplained formula).

---

[8] The Court calculates this number by subtracting the checks received in connection with the October 20, 2022 Audit Report from the original delinquency as follows: $420,802.75 (original delinquency) - $11,879.42 (Aug. 30, 2022 payment by ProMetal Construction) - $64,450.33 (payment by Delric Construction Co. Inc.) - $968.04 (payment by Delric Construction Co. Inc.) - $112,473.21 (payment by Civil Contracting Corp.) - $201,967.81 (settlement with UTB and QBE) = $29,063.94. (Argila Aff. Ex. H, ECF No. 37-8; Argila Aff. Ex. I, ECF No. 37-8.)

To support their calculations for interest on unpaid contributions during the same time period, Plaintiffs rely on the same Audit Delinquency Spreadsheet that incorrectly subtracts the settlement payments and lists $214,926.75 as the total original delinquency. (*See* Pls. Mem., ECF No. 40 at 19 (citing Morgan Decl. Ex. FF, ECF No. 39-14); Morgan Decl., ECF No. 39 ¶ 53.) Plaintiffs also subsequently rely on this interest calculation and Audit Delinquency Spreadsheet for their calculations of liquidated damages on the unpaid contributions. (*See* Pls. Mem., ECF No. 40 at 19 (citing Morgan Decl. Ex. FF, ECF No. 39-14)). As a result, all calculations stemming from the Audit Delinquency Spreadsheet (unpaid contributions, interest, and liquidated damages) are potentially incorrect. *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 22-CV-5047 (DG)(RML), 2023 WL 5152421, at *4 (E.D.N.Y. May 16, 2023), *adopted by* Order Adopting R. & R., *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 22-CV-5047 (DG)(RML) (E.D.N.Y. Aug. 17, 2023).

Similar errors apply to Plaintiffs' calculations for the unpaid contributions and interest from July 1, 2021, through October 27, 2022. For example, for this period, Plaintiffs rely on the D&O Schedule, which states a total delinquency of unpaid fringe benefit contributions, dues, and assessments in the amount of $152,958.83 owed to Plaintiffs for work performed during the post-audit period between July 1, 2021 through October 27, 2022. (Duravcevic Aff., ECF No. 38 ¶¶ 21–22; Duravcevic Aff. Ex. R, ECF No. 38-9.) After the D&O Schedule was issued and after the filing of this lawsuit, Mach's general contractor Pro-Metal Construction paid $65,009.58 towards the delinquency in the D&O Schedule. (Morgan Decl., ECF No. 39 ¶ 62; Argila Aff. Ex. H, ECF No. 37-8 at 3.) After applying this payment, the

delinquency in the D&O Schedule was reduced to $87,949.25. (Morgan Decl., ECF No. 39 ¶ 62.) Plaintiffs then assert that the amount of unpaid contributions is $78,994.85, based on the 92% ratio (*i.e.*, $87,949.25 x 92%). (*Id.*) As noted, there is no explanation for this multiplier. Further, by the Court's calculations, even if the multiplier is correct, 92% of $87,949.25 is <u>$80,913.31</u>, not <u>$78,994.85</u>. Further, Plaintiffs use the D&O Schedule Delinquency Spreadsheet for their interest calculations during this same time period, but this document states the same unexplained and potentially incorrect amount for unpaid contributions—*i.e.*, $78,994.85. (*See* Pls. Mem., ECF No. 40 at 21 (citing Morgan Decl. Ex. GG, ECF No. 39-15).) Therefore, the interest and liquidated damages calculations are also suspect. *Atl. Steel Sols., LLC*, No. 22-CV-5047 (DG)(RML), 2023 WL 5152421, at *4 (E.D.N.Y. May 16, 2023).

Based on the Court's recalculations (assuming Plaintiffs' formula can be explained), the total unpaid contributions could be approximately **$107,652.13** consisting of: (1) $26,738.82 in unpaid contributions for the period between March 1, 2017 through June 30, 2021; and (2) $80,913.31 for unpaid contributions for the period between July 1, 2021 through October 27, 2022. However, these unclear formula and calculation errors are sufficient for the Court to recommend denial of the requested unpaid ERISA contributions and related interest and liquidated damages.

### B.    Unpaid LMRA Dues and Assessments

Plaintiffs also seek $11,403.84 in unpaid dues and assessments, which includes: (1) $2,449.44 in unpaid dues and assessments for the period between March 1, 2017 through June 30, 2021; and (2) $8,954.40 in unpaid dues and assessments for the period between July 1,

2021 through October 27, 2022. (Proposed Default Judgmt., ECF No. 36-1; Morgan Decl., ECF No. 39 ¶¶ 55, 62.)

Plaintiffs' calculations for unpaid dues and assessments include similar omissions and missteps as the calculations for unpaid contributions, primarily because they rely on the same documents. For example, to determine unpaid dues from March 1, 2017 through June 30, 2021, Plaintiffs again rely on the Audit Report and the offsets from the settlement payments. (Duravcevic Aff. Ex. Q, ECF Nos. 38-8; Morgan Decl., ECF No. 39 ¶ 50.) Plaintiffs again subtract the settlement payments from the total delinquency set forth in the Audit Report, and multiply the remainder by 8%, the percentage attributable to non-ERISA or LMRA dues and assessments. (*See* Morgan Decl., ECF No. 39 ¶ 55; Pls. Mem., ECF No. 40 at 18.) As discussed, Plaintiffs incorrectly calculated the total remaining delinquency after applying the settlement payments as $30,617.95, but the Court calculates the amount as $29,063.94. (*See* § V.A, *supra*.) Multiplying this amount by 8% yields $2,325.11 in unpaid dues and assessments for this period. As another example, and as before, Plaintiffs rely on the potentially incorrect Audit Delinquency Spreadsheet in support of their subsequent interest calculations for the unpaid dues and assessments for this period. (*See* Pls. Mem., ECF No. 40 at 20 (citing Morgan Decl. Ex. FF, ECF No. 39-14).) Similarly, for the unpaid dues and assessments from July 1, 2021, through October 27, 2022, Plaintiffs rely on the D&O Schedule and offsets for settlement payments, as they did for the unpaid contributions for the same time period. (*See* § V.A., *supra*.) As noted above, after applying the settlement payment from ProMetal Construction, the delinquency in the D&O Schedule was reduced to $87,949.25. (*Id.*) Just as Plaintiffs applied the unexplained 92% ratio to determine the unpaid contributions for this period, Plaintiff also apply the remaining and unexplained 8% for to determine the

unpaid dues and assessments for this period as $8,954.40 (*i.e.*, $87,949.25 x 8%).  (Morgan Decl., ECF No. 39 ¶ 62.)   However, by the Court's calculations, the correct amount is $7,035.94.  Finally, because the D&O Schedule Delinquency Spreadsheet states the incorrect amount of unpaid dues and assessments as $8,954.40, the interest on those dues and assessment cannot be accurately calculated on this record.  (*See* Pls. Mem., ECF No. 40 at 19 (citing Morgan Decl., Ex. GG, ECF No. 39-15).)

Based on the Court's recalculations, the total unpaid dues and assessments could be approximately **$9,361.05,** which includes: (1) $2,325.11 in unpaid dues and assessments for the period between March 1, 2017 through June 30, 2021; and (2) $7,035.94 for unpaid dues and assessments for the period between July 1, 2021 through October 27, 2022.  Again, without further information, these figure cannot be determined with accuracy.

For the foregoing reasons, the Court respectfully recommends denying Plaintiffs' request for delinquent contributions, interest and liquidated damages on the unpaid contributions, unpaid dues and assessments, and interest on the unpaid dues and assessments. "This Court instead recommends providing plaintiffs with an opportunity to recalculate and supplement their damages submission" with respect to these damages.  *Atl. Steel Sols.*, No. 21-CV-02518 (CBA)(JRC), 2022 WL 4642735, at *5.

### C.    Audit Costs

Plaintiffs seek $16,975.00 in audit costs.  (Pls. Mem., ECF No. 40 at 21.)

Pursuant to ERISA, courts may award "such other legal or equitable relief as the court deems appropriate"  and regularly award reasonable audit costs.  29 U.S.C. § 1132(g)(2)(E); *see, e.g.*, *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *9; *Champion Elec.*, 2020 WL 9814085, at *8.  "Requests for audit fees must be supported by records . . . sufficient to allow

the court to determine the reasonableness of audit costs." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Triton Builders, Inc.*, No. 22-CV-4809 (DLI)(LB), 2022 WL 18859028, at *9 (E.D.N.Y. Nov. 16, 2022).  "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." *Id*.

The CBAs state that "[a]ny [e]mployer whose account with any of Fringe Benefit Funds is found, upon regular or special audit ordered by the Trustees, to be substantially delinquent, said Employer may be charged the full cost of such audit[.]"  (Argila Aff. Ex. A, ECF No. 37-1 at 20 (art. 15 § 7(j)); *id.* Ex. B, ECF No. 37-1 at 20 (art. 15 § 7(j)).)  In his affidavit, Duravcevic, Kobgo's Payroll Audit Manager, avers that Kobgo's work included: "a) a review of Mach's weekly certified payroll reports and shop steward reports; b) a review of numerous audit objections and supporting documentation; c) a review of payment submitted to the Funds in connection with Mach's delinquencies; d) and the preparation of various summary schedules."  (Duravcevic Aff., ECF No. 38 ¶ 25.)  Argila affirms this work performed. (Argila Aff., ECF No. 37 ¶¶ 23–32.)

Despite these averments, the record does not include any documents stating the number of hours expended or a breakdown of Kobgo's rates.  "Absent such explanation, the court cannot determine whether the amount requested is reasonable." *Sullivan v. A & Z Constr. Co.*, No. CV 2012-2825 (NGG)(MDG), 2016 WL 4991541, at *9 (E.D.N.Y. Mar. 11, 2016) (collecting cases), *adopted by* 2016 WL 5061104 (E.D.N.Y. Sept. 16, 2016); *see also Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.*, No. 08-CV-116 (FB)(JMA), 2009 WL 2461738, at *5 (E.D.N.Y. Aug. 11, 2009) (denying audit costs

where time records did not provide "any meaningful explanation specifying what work was performed"); *contra Triton Builders*, 2022 WL 18859028, at *9 (awarding audit fees when payroll audit manager identified hours and rates charged to conduct audit).

However, the Court finds that "a substantial amount of work was required to conduct the audit and respond to [Mach's and others'] objections to the auditor's findings." *A & Z Constr. Co.*, 2016 WL 4991541, at *9. "'Where calculation of unpaid contributions during an audit appears particularly complicated or time-consuming, a higher award of audit costs is justified.'" *Id.* (quoting *Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Tr., Lab. Mgmt. Coop. & Scholarship Funds v. Creative Installations, Inc.*, No. 10-CV-582 (ADS)(GRB), 2012 WL 4482815, at *8 (E.D.N.Y. Aug. 31, 2012)). Notwithstanding the damages calculation concerns identified above, the complex circumstances underlying the audit work in this action justify the requested audit costs.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$16,975** in audit costs.

### D. Attorneys' Fees

Plaintiffs seek to recover $104,163.00 in attorneys' fees for 451.4 hours of work (Pls. Mem., ECF No. 40 at 25.)

ERISA allows for an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Additionally, pursuant to the CBAs, Mach is liable for "attorney's fees provided for pursuant to the civil enforcement of provisions of [ERISA]." (Argila Aff. Ex. A, ECF No. 37-1 at 19 (art. XV § 7(e)); *id.* Ex. B, ECF No. 38-1 at 19 (art. XV § 7(e)).) District courts have broad discretion to determine the amount of attorneys' fees. *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc.*

15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 7390362, at *9 (E.D.N.Y. Aug. 9, 2023), *adopted sub nom. by Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15 , 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.,* No. 22-CV-6080 (ENV)(TAM), 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023).

In the Second Circuit, courts calculate a "presumptively reasonable fee" by examining the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by a case. *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *10. To determine a reasonable hourly rate, the court looks to the hourly rates that attorneys charge for comparable work. *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b, AFL-CIO by Christian v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB)(RML), 2023 WL 7413837, at *4 (E.D.N.Y. Sept. 28, 2023), *adopted by* 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023). "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of the hours spent and the rates charged." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *10. A request for attorneys' fees must include contemporaneous time records that specify for each attorney, the hours expended and the nature of the work done. *Regal USA Concrete*, 2023 WL 7413837, at *3. "In reviewing a fee application, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *11 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)).

### 1.    Hourly Rate

Plaintiffs request attorneys' fees based on the following hourly rates: $285.00 for attorney Katherine M. Morgan, who has been licensed to practice in New York since 2014 and

is a partner at the firm; $285.00 for attorney Carol G. Dell, who has been licensed to practice in New York since 2001; $215.00 for former associate M. Aliza Chesler; $155.00 for former employees Michelle Sciortino and Jenna Agatep, both attorneys; and $95.00 for law clerk Elizabeth Shaw, paralegal Paulina Albarracin, and interns Katherine Will, Krista Doherty, and Jared Wolff. (Morgan Decl. ECF No. 39, ¶¶ 81–85; Pls. Mem., ECF No. 40 at 23–24.)

The ordinary rates for attorneys in the Eastern District of New York are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates. *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *11.  The Court finds that the requested hourly rate are consistent with the rates for attorneys in the district and are therefore, reasonable.

## 2.    Reasonable Hours Expended

Counsel requests attorneys' fees based on a total of 451.4 hours. As an initial matter, Plaintiffs do not state the total number of hours worked. After a review of the attorney billing records the Court calculated the total number of hours as follows: 397.4 hours (Morgan Decl. Ex. II, ECF No. 39-17 at 1) + 6.5 hours (Morgan Decl. Ex. II, ECF No. 39-17 at 78) + 47.5 hours (Morgan Decl. Ex. II, ECF No. 39-17 at 79) = 451.4 hours.  These hours far exceed the range of reasonable hours expended in ERISA cases involving a default judgment.  *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834 (FB)(SJB), 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022), *adopted by* 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022) (awarding 39.4 hours of work in an ERISA action even though this amount was "slightly higher than the amount of time typically spent"); *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *12 (recommending awarding 48.8 hours for attorneys' fee in ERISA action

where plaintiffs' counsel had to review extensive records and prepare a number of detailed declarations). That said, "given the complexity of the damage calculations, the detailed submissions prepared by Plaintiffs' attorneys, and their successful efforts to settle with [ten of the eleven other defendants in this case] for the payment of [Mach's] delinquency, such use of time was not excessive, redundant, otherwise unnecessary." *Champion Elec.*, 2020 WL 9814085, at *9 (awarding the same plaintiffs' counsel's firm attorneys' fees of $32,343 for 149.9 hours of work in ERISA default). Accordingly, the Court respectfully recommends an award of **$104,163.00** in attorneys' fees.

### E.    Costs

Plaintiffs seek $1,660.25 in costs, including filing fees, costs of service, printing, postage, fax machine charges, and making copies. (Morgan Decl., ECF No. 39 ¶¶ 86, 87, 90; Pls. Mem., ECF No. 40 at 25.)  "When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *Bd. of Trs. of Loc. 810 Affiliated Pension Fund v. Joseph Eletto Transfer, Inc.*, No. 23-CV-1616 (DLI)(MMH), 2024 WL 628808, at *8 (E.D.N.Y. Feb. 1, 2024), *adopted by* Order Adopting R. & R., No. 23-CV-1616 (DLI)(MMH), (E.D.N.Y. Feb. 22, 2024) (cleaned up).  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, Plaintiffs are entitled to the filing fee for this case, as the docket reflects that Plaintiffs paid the $402 filing fee.  (ECF No. 1 Dkt. Entry.) Plaintiffs also submit receipts to support the remaining costs. (Morgan Decl. Ex. II, ECF No. 39-17 at 46; Morgan Decl. Ex. JJ, ECF No. 39-18.)  The Court finds these costs reasonable

and substantiated, and therefore respectfully recommends that Plaintiffs should be awarded **$1,660.25** in costs.

### F. Post-Judgment Interest

Plaintiffs did not specifically request post-judgment interest in the Complaint or in the default motion submission. However, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court respectfully recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VI.    <u>CONCLUSION</u>

For all the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 36 should be **granted in part** as follows: (1) a default judgment should be entered against Defendant Mach Group Inc. on the ERISA and LMRA claims; and (2) Plaintiffs should be awarded the following damages: (a) **$16,975.00** in audit costs; (b) **$104,163.00** in attorneys' fees; (c) **$1,660.25** in costs; and (d) post-judgment interest at the statutory rate. The Court further recommends that Plaintiffs' motion should be **denied without prejudice** as to unpaid contributions, dues, and assessments; interest and liquidated damages on the unpaid contributions; and interest on the unpaid dues and assessments. Finally, the Court further recommends that Plaintiffs should be granted leave to submit supplementary briefing on the damages issues described herein within 30 days of the adoption of this Report and Recommendation, if it is adopted.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation to Defendant Mach Group Inc. at 245 Correja Avenue, Iselin, New Jersey 08830.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Matsumoto.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 8, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge