United States District Court
Eastern District of New York

------------------------------------X

Jack Argila, *et al.*,

        Plaintiffs,                  **Memorandum and Order**

  - against -                         No. 22-cv-4374 (KAM) (MMH)

Mach Group, Inc., *et al.*,

        Defendants.

------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

    The plaintiffs in this labor action have filed two motions for relief from judgment. The first motion requests that the Court assume jurisdiction to enforce the plaintiffs' settlement agreement with one of the defendants, UTB-United Technology, Inc. The second motion requests that the Court reconsider the amount of attorney fees it awarded the plaintiffs against another defendant, Mach Group, Inc. For the reasons below, the Court grants the motions.

## Background

    The plaintiffs commenced this action against eleven defendants on July 25, 2022, and ultimately settled or otherwise dismissed their claims against all of them except for Mach. (*See* ECF Nos. 1, 12-13, 24, 32, 35.)

    When the plaintiffs notified the Court of their settlement

with UTB and another defendant, QBE Insurance Corp., Magistrate Judge Henry directed them to file a stipulation of dismissal. (Order, Apr. 20, 2023.)  Instead, the plaintiffs filed a "stipulation of settlement," in which the parties agreed that the Court would expressly retain jurisdiction to enforce the settlement agreement and provided for the Court to "so order" it but did not condition the agreement's enforcement on the Court's signature.  (ECF No. 30, Stip. Settlement.)  Because the stipulation of settlement included no language dismissing the plaintiffs' claims against UTB, the Court directed the parties to file a "stipulation of settlement and dismissal."  (Order, May 8, 2023.)  The parties filed a stipulation of dismissal on May 9, 2023, (ECF No. 31, Stip. Dismissal), which the Court so-ordered the same day, (ECF No. 32, Stip. & Order).  The stipulation of dismissal did not incorporate the settlement terms or retain jurisdiction to enforce the agreement, (*see* ECF No. 32, Stip. & Order), and the Court never so-ordered the stipulation of settlement.

On August 21, 2023, the plaintiffs moved for a default judgment against Mach, the only remaining defendant.  (ECF No. 36, Notice Mot. Default J.)  The Court referred the motion to Magistrate Judge Henry for a report and recommendation, (Order Referring Mot., Oct. 5, 2023), which the Court on March 23, 2024, adopted in all respects except as to the

plaintiffs' request for attorney fees, (ECF No. 43, Order Adopting R&R), 2024 WL 1235611 (E.D.N.Y. Mar. 23, 2024). The Court reduced the attorney fee award by sixty percent from the plaintiffs' requested amount because the Court found the 451.4 hours for which the plaintiffs requested fees unreasonable based on the plaintiffs' submissions and other information available on the docket. *Id.* at *2. The Court explained that the plaintiffs' supporting memorandum did not argue, much less establish, that 451.4 was a reasonable expenditure of time or cite a case in which any judge awarded a similar figure in an ERISA default judgment case. *Id.* (noting that courts in this district generally award fees for twenty to thirty hours of work in such cases). The Court further found it unreasonable to find Mach, the sole remaining defendant, liable for all the work the plaintiffs' attorneys did in the case, a significant amount of which involved settling with other defendants. *Id.*

As Magistrate Judge Henry recommended, the Court ordered the plaintiffs to file a supplemental submission correcting various defects identified in the plaintiffs' damages calculations. *Id.* at *2. After the plaintiffs did so, the Court granted their motion for default judgment on June 3, 2024. (ECF No. 45, Mem. & Order), 2024 WL 2816560 (E.D.N.Y. June 3, 2024). Finally, on June 5, 2024, the Clerk of Court entered the final judgment and closed the case. (ECF No. 46, Judgment.)

3

On June 7, 2024, the plaintiffs filed a motion to reopen the judgment under Federal Rule of Civil Procedure 60(b), requesting that the Court so-order their "stipulation of settlement" with UTB and QBE for the purpose of enforcing the payment terms after UTB allegedly defaulted under the settlement terms.  (ECF No. 47, June 7, 2024, Ltr. from K. Morgan ("1st Mot.").)  On June 19, 2024, the plaintiffs filed a motion requesting that the Court reconsider its decision to reduce the attorney fee award against Mach.  (ECF No. 49-1, Mem. Law Supp. Mot. Reconsideration ("2d Mot.").)

**Legal Standards**

**I.   Motion for Relief from Judgment**

Federal Rule of Civil Procedure 60(b) authorizes the court to grant a party or its representative relief from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Whether to grant the motion is within the district court's "sound discretion."  *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Montco, Inc. v. Barr (In*

4

*re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)).

## II.  Motion for Reconsideration

A motion for reconsideration made after a final judgment is governed both by Federal Rule of Civil Procedure 60(b) and by Local Civil Rule 6.3. *Williams v. N.Y. City Dep't of Corr.*, 219 F.R.D. 78, 82 (S.D.N.Y. 2003).  Reconsideration is appropriate only to (1) account for an intervening change in controlling law or newly available evidence that likely would have altered the court's decision, (2) correct a clear error, or (3) avoid manifest injustice. *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021).  A party's "disagreement" with the court's "explication of the relevant legal standards and application of the standards to the facts of [the] case" does not satisfy the "clear error" standard. *See McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018).  The "manifest injustice" standard affords the district court substantial discretion and is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002).

The standard for reconsideration is "strict" to "dissuade repetitive arguments on issues" that the court already has "considered fully." *CFTC v. McDonnell*, 321 F. Supp. 3d 366, 367 (E.D.N.Y. 2018) (quoting *Nielsen v. N.Y. City Dep't of Educ.*, No. 04-cv-2182 (NGG), 2007 WL 2743678, at *1 (E.D.N.Y. Sept. 18, 2007)).  Thus, the moving party may not rely on information it

5

could have but failed to present before, nor may it simply elaborate on arguments it already made. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

## Discussion

### I. The Plaintiffs' Settlement With UTB

The plaintiffs seek to reopen the judgment with respect to enforcing their settlement terms with UTB based on Rule 60(b)(1). (1st Mot. 2.) A federal district court's jurisdiction over a case does not automatically extend to a dispute over a settlement agreement that resolves the case. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378 (1994). A settlement agreement is a contract, and a party's failure to comply with its terms gives rise to a breach of contract claim separate and apart from the claims in the underlying action. *Id.* at 381. Absent an independent basis for federal jurisdiction, a breach of contract action between non-diverse parties must be brought in state court. *Id.* at 382.

A federal district court has "ancillary" jurisdiction to enforce the terms of a settlement agreement only if the court's dismissal order incorporates the agreement's terms or expressly states that the court retains jurisdiction to enforce the agreement. *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015). The Court's mere acknowledgment and approval of the settlement terms does not suffice. *Id.* at 360. Moreover,

6

the incorporation of settlement terms or retention of jurisdiction must occur before the "district court issues a final decision," at which point the court "disassociates itself from [the] case" and its jurisdiction generally "comes to an end." *Id.* at 360 (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 34, 42 (1995)). "Even where a court has not retained jurisdiction to enforce a settlement agreement," however, "it may consider a motion for relief under Rule 60(b)." *Melchor v. Eisen & Son Inc.*, No. 15-cv-113 (DF), 2016 WL 3443649, at *6 (S.D.N.Y. June 10, 2016).

Here, the Court's order dismissing the plaintiffs' claims against UTB did not incorporate the parties' settlement terms or expressly retain jurisdiction to enforce the settlement agreement. (*See* ECF No. 32, Stip. & Order.) Thus, UTB's alleged violation of its payment obligations under the agreement gives rise to a breach of contract claim under state law between non-diverse parties, which the Court ordinarily would have no subject-matter jurisdiction to adjudicate. *See Lei v. Haryin Inc.*, 644 F. Supp. 3d 1, 6 (S.D.N.Y. 2022) (finding no subject-matter jurisdiction over motion to enforce settlement agreement where court had not "expressly retained jurisdiction over the settlement agreement in its order of dismissal or incorporated the terms of the agreement into the order").

Because this case already reached a final judgment, into

7

which the order dismissing the plaintiffs' claims against UTB has now merged, *see United States v. Bert*, 814 F.3d 70, 76 n.3 (2d Cir. 2016), any request to alter the dismissal order must be sought as relief from the judgment under Rule 60. The plaintiffs seek relief under Rule 60(b)(1), which is available for "mistake, inadvertence, surprise, or excusable neglect." Factors relevant to whether relief under Rule 60(b)(1) is appropriate include (1) prejudice to the non-moving party, (2) the length of the delay, (3) the reason for the delay, including whether it was within the moving party's "reasonable control," and (4) whether the moving party acted in good faith. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 365–66 (2d Cir. 2003).

A motion under Rule 60(b)(1) must be brought within one year "after entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). Here, the plaintiffs filed their June 7, 2024, Rule 60 motion over a year after entry of the Court's May 9, 2023, "order" dismissing their claims against UTB, (*see* ECF No. 32, Stip. & Order), but less than a year after entry of the June 5, 2024, "judgment" that closed the case, (*see* ECF No. 46, Judgment). The one-year time limit runs from the date of the final judgment, not from the date of the interlocutory dismissal order. *See Harbec v. N. Country Hosp. & Health Practices*, No. 19-cv-61 (GWC), 2021 WL 6331842, at *7 (D. Vt. Nov. 17,

8

2021) (concluding that Rule 60(c)(1) "does not anticipate Rule 60(b) filings from interlocutory orders prior to final judgment"); 11 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2866 (3d ed. 2024) ("The one-year limit on motions under the first three clauses [of Rule 60(b)] runs from the date the judgment was entered in the district court."). Thus, the plaintiffs' motion is timely.

Additionally, the relevant factors on balance favor granting relief. The first factor, prejudice to the non-moving party, favors the plaintiffs because the Court's retention of jurisdiction over the settlement agreement will not prejudice UTB. The docket already contains a filing signed by UTB showing that UTB agreed to the settlement terms and "request[ed] that this Court's Order incorporate . . . all of the terms" of the settlement agreement "and any exhibits annexed" to it, which includes a confession of judgment. (*See* ECF No 30, Stip. Settlement ¶ 6.) The second factor, the length of the delay, weighs against the plaintiffs because they should have raised this issue earlier than a year after the Court so-ordered their stipulation of dismissal with UTB. The third factor, the reason for the delay, favors the plaintiffs, however, because the Court agrees that the language of its May 8, 2023, order left it somewhat ambiguous whether the plaintiffs had to re-file their settlement agreement in order for the Court to assume

9

jurisdiction over its enforcement as the parties requested and as the Court intended.  Finally, as to the fourth factor, there is no indication the plaintiffs acted in bad faith.  Accordingly, the relevant factors on balance favor the plaintiffs and the Court grants the plaintiffs' motion to set aside the judgment for the purpose of retaining jurisdiction over the plaintiffs' settlement agreement with UTB.

**II. The Attorney Fee Award Against Mach**

The Court would be well within its discretion to deny the plaintiffs' motion to reconsider the attorney fee award.  The plaintiffs cite no "intervening change of controlling law" or "availability of new evidence," nor do they identify a "clear error" in the Court's attorney fee calculation.  *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013)).  The plaintiffs' motion simply relitigates the request for attorney fees they presented with their motion for a default judgment, which ordinarily is an unacceptable reason to seek reconsideration of a court order.  *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

 The plaintiffs' motion for reconsideration is eighteen pages long.  (*See generally* 2d Mot.)  Their original argument in support of their attorney fee request amounted to just four

10

paragraphs, which included *no explanatory facts or argument whatsoever* that it was reasonable to request fees for over four hundred hours of work. (*See* ECF No. 40, Pls.' Mem. Law Supp. Mot. Default J., 17-19.) The hourly rate and number of hours worked are two distinct components of an attorney fee calculation, and courts analyze the reasonableness of each component separately. *See, e.g.*, *Bay Park Ctr. For Nursing & Rehabilitation LLC v. Philipson*, 659 F. Supp. 3d 312, 317-22 (E.D.N.Y. 2023). By omitting any explanation as to one of the two components and leaving it entirely to the Court to examine their legal bills for reasonableness, the plaintiffs proceeded at their peril. Courts do not grant attorney fee requests as a matter of course and routinely reduce them to reasonable amounts. Moreover, courts exercise heightened vigilance in default judgment cases, where the moving party can take more aggressive positions because there is no opposing counsel to oppose the request. The plaintiffs acknowledge that this case presented "unique complexity" and that there was no directly comparable case to cite. (2d Mot. 8.) The lack of such case law did not eliminate but rather amplified the need for the plaintiffs to provide a comprehensive explanation in their request for fees when they moved for a default judgment.

Nonetheless, after reviewing the plaintiffs' belated explanation, the Court finds that revising the attorney fee

11

award is necessary to avoid manifest injustice. After reductions for reasonableness, courts in this district typically award attorney fees for roughly twenty to thirty hours of work in ERISA default judgment cases. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D v. PETK, Inc.*, No. 22-cv-3559 (LDH) (LB), 2022 WL 19520880, at *7 (E.D.N.Y. Oct. 13, 2022) (collecting cases). The typical case, however, involves one defendant and possibly one audit report. *See, e.g., id.* The plaintiffs in the instant case sought relief against eleven defendants and analyzed and enforced eight different audit reports and a delinquency and omissions schedule for a separate delinquency period. (2d Mot. 10.) This work was not redundant because several defendants (initially including Mach, the defaulting defendant) actively participated in the case, objecting to the audit reports, producing records piecemeal, and making partial payments, all of which were accomplished only with the plaintiffs' attorneys prompting. (*Id.* 10–11.) Mach's decision to stop cooperating protracted the litigation by forcing the plaintiffs to seek records from city agencies and general contractors. (*Id.* 2.) *Mach*, rather than the plaintiffs, bore responsibility for increasing the amount of legal work the plaintiffs' attorneys performed.

Additionally, though a party ordinarily cannot seek

12

attorney fees from one defendant based on work done settling with another defendant, *Sullivan v. Prestige Stone & Pavers Corp.*, No. 16-cv-3348 (AT) (DF), 2020 WL 2859006, at *12–13 (S.D.N.Y. Feb. 4, 2020), the instant case is unique in that the other defendants were liable for *Mach's* principal delinquency under the relevant contractual arrangements.  (*See* 2d Mot. 16.) In other words, the other defendants' settlements directly reduced Mach's liability.  Further, had the plaintiffs collected the entire liability amount from Mach, they would have been entitled to attorney fees under ERISA and the collective bargaining agreement.  (*See* ECF No. 37-1 Art. XV, § 7(e)); 29 U.S.C. § 1132(g)(2)(D).  Thus, reducing the plaintiffs' attorney fee award based on the plaintiffs' settlements with other parties would give Mach both the benefit of having other defendants paying Mach's obligations *and* avoiding liability for attorney fees because the plaintiffs were forced to collect from other defendants.  (*See* 2d Mot. 17.)

The plaintiffs explained none of the foregoing in their default judgment papers.  (*See* ECF No. 40, Pls.' Mem. Law Supp. Mot. Default J., 17–19.)  The Court ordinarily could find that the plaintiffs bear the consequences of failing to provide an adequate explanation for their extraordinarily high attorney fee request; however, the Court exercises its discretion to find that its prior reduction to the plaintiffs' requested fee award

13

would not be just under the circumstances.  Accordingly, although the requested attorney fee award is high for this type of litigation, the unique complexity and idiosyncrasies of the case render the award reasonable under the circumstances.

## Conclusion

For the reasons above, the Court grants the plaintiffs' motions for relief from judgment.

The Clerk of Court is respectfully requested to enter an amended final judgment (1) expressly incorporating and retaining jurisdiction over the terms of the plaintiffs' stipulation of settlement with UTB and QBE, including the confession of judgment attached to it, and (2) revising the plaintiffs' attorney fee award against Mach to $104,163, and to close this case.

The plaintiffs are respectfully requested to serve a copy of (1) this Memorandum and Order and (2) the Amended Judgment on Mach and note service on the docket within two days after the Clerk of Court enters the Amended Judgment.

**So ordered.**

Dated:    July 2, 2024
          Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York